COLEEN R. GLASCO, Plaintiff-Appellant, v. GEORGE MARONY *et al.*, Defendants-Appellees.

Fifth District    No. 5—03—0135

Opinion filed April 20, 2004.

1070

Thomas W. Moyer, of Carbondale, for appellant.

Edward S. Bott and David W. Ybarra, both of Greensfelder, Hemker & Gale, of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

The plaintiff, Coleen R. Glasco, filed her complaint against the defendants, George Marony and Joseph Goodge, and alleged that the defendants had violated the AIDS Confidentiality Act (the Act) (410 ILCS 305/1 *et seq.* (West 2000)). The defendants served their request for admissions on the plaintiff, and the plaintiff did not deny or object to the requests within the rule's time limit (134 Ill. 2d R. 216). The circuit court denied the plaintiff's motion to file late answers to the defendants' request for admissions and granted the defendants' motion for a summary judgment. For the reasons that follow, we affirm the ruling of the trial court.

On September 13, 2001, the plaintiff filed her complaint against the defendants and alleged that they had wrongfully disclosed her confidential HIV report in violation of the Act. The plaintiff alleged that the defendant Goodge, a lab employee of Memorial Hospital of Carbondale, had accessed the plaintiff's confidential HIV report and provided a copy of the report to the defendant Marony and that the defendant Marony had released the plaintiff's HIV test results to five additional persons. The plaintiff sought damages of $5,000 for each intentional or reckless disclosure, in addition to attorney fees. See 410 ILCS 305/13 (West 2000).

On February 1, 2002, the defendants filed their request for admissions, along with their certificate of service, indicating that they had mailed the request to the plaintiff's attorney on January 28, 2002. The defendants requested that the plaintiff admit the following facts:

1. The plaintiff requested that Marti Burrows perform an HIV test on the plaintiff without the knowledge or without an order of any physician at Memorial Hospital of Carbondale, Illinois.

2. The plaintiff did not request that the test be performed by any physician.

3. No physician ordered the HIV test performed on the plaintiff.

4. The plaintiff obtained a negative HIV test result from the hospital laboratory.

5. The plaintiff changed the negative test result of her HIV test to reflect a positive test result.

6. The plaintiff or the plaintiff's husband mailed the altered HIV test result to Dr. Guillen.

7. The plaintiff had not requested that the HIV test be performed anonymously by using a coded system that does not link individual identity with the request or the result.

8. George Marony was an employee of Memorial Hospital of Carbondale on October 28, 1999.

9. Joseph Goodge was an employee of Memorial Hospital of Carbondale on October 28, 1999.

10. The plaintiff, while employed at Memorial Hospital of Carbondale, on October 28, 1999, was involved in direct patient care.

11. The plaintiff ordered the HIV test for herself.

On August 22, 2002, the defendants filed their motion for a summary judgment. In their motion, the defendants asserted that the plaintiff had failed to respond to the defendants' request for admissions and that, as a result, the facts in the defendants' request for admissions were deemed admitted. The defendants concluded that because the plaintiff had not obtained the HIV test results by the procedures outlined in the Act and because the plaintiff had voluntarily disclosed her results, the plaintiff could not claim protection under the Act and, therefore, the defendants were entitled to a summary judgment.

On September 5, 2002, the plaintiff filed a motion to allow her to answer the defendants' request for admissions. She asserted that the plaintiff's attorney had been unaware of and unable to locate the request for admissions that had been sent to him.

On October 1, 2002, the circuit court denied the plaintiff's motion to allow the plaintiff to answer the defendants' request for admissions. On the same day, noting that the plaintiff failed to offer evidence to counter her constructive admissions, the circuit court entered a summary judgment for the defendants.

On October 31, 2002, the plaintiff filed her motion to reconsider, to which the plaintiff's attorney attached his affidavit stating that he had not received the defendants' request for admissions and that he had been out of town and did not have a secretary between January 28 and February 4, 2002. On December 6, 2002, the circuit court denied the plaintiff's motion to reconsider, and on January 3, 2003, the plaintiff filed her timely notice of appeal.

■ The plaintiff's first contention on appeal is that the circuit

court erred in denying her request to serve late responses to the defendants' request for admissions. The circuit court has discretion regarding the conduct of discovery. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 352 (1998). We will not reverse the circuit court's decision to deny a motion for an extension of time, absent an abuse of discretion. *Ragan*, 183 Ill. 2d at 352; *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338 (1994).

■ "A party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request." 134 Ill. 2d R. 216(a). A fact is deemed admitted unless the party to whom the request for admissions was directed responds within 28 days with a sworn statement or written objection. 134 Ill. 2d R. 216(c).

Supreme Court Rule 183 gives judges discretion to allow responses to be served beyond the 28-day time limit, but the respondent must first show good cause for the extension. 134 Ill. 2d R. 183; *Bright v. Dicke*, 166 Ill. 2d 204, 209 (1995). The fact that the opposing party did not suffer prejudice is irrelevant. *Bright*, 166 Ill. 2d at 209. The respondent must assert some independent ground why his untimely response should be allowed. *Bright*, 166 Ill. 2d at 209.

On February 1, 2002, the defendants filed their request for admissions, along with their certificate of service, indicating that they had mailed the request to the plaintiff's attorney on January 28, 2002. The plaintiff did not deny or object to the requests within 28 days. When the plaintiff requested leave to file her late answers to the defendants' request for admissions, she asserted that her attorney was unable to locate the request for admissions and had been unaware of the document until the defendants filed their motion for a summary judgment on August 22, 2002. In the plaintiff's motion to reconsider, the plaintiff's attorney asserted that he had been out of town and without a secretary at the time of service.

■ We find that the circuit court did not abuse its discretion by denying the plaintiff's request for an extension of time to respond to the defendants' request for admissions. Mistake, inadvertence, or simple attorney neglect cannot constitute the sole basis for a good cause determination. See *Greene v. City of Chicago*, 48 Ill. App. 3d 502, 513 (1976), *aff'd*, 73 Ill. 2d 100, 382 N.E.2d 1205 (1978); *Floyd v. United States*, 900 F.2d 1045, 1048 (7th Cir. 1990). We affirm the circuit court's judgment on this issue.

■ The plaintiff's second contention on appeal is that even if the circuit court did not abuse its discretion in denying the plaintiff's request for an extension, the facts deemed admitted do not support the circuit court's award of a summary judgment for the defendants.

We do not agree. A summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, and admissions on file, together with the affidavits, if any, reveal that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). The failure to respond to a request for admissions may be considered in a motion for a summary judgment and provide a basis for a court to grant the motion for a summary judgment. *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 244 (1998). Although a summary judgment is an expeditious method of disposing of a lawsuit, it should only be allowed when the right of the moving party is clear and free from doubt. *Purtill*, 111 Ill. 2d at 240. We review a summary judgment *de novo. Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

■ The burden of proof and the initial burden of production for a motion for a summary judgment lie with the movant. *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933 (2001). A defendant who moves for a summary judgment may meet the initial burden of production either (1) by affirmatively showing that some element of the cause of action must be resolved in the defendant's favor or (2) by demonstrating that the plaintiff cannot produce evidence necessary to support the cause of action. *Pecora*, 323 Ill. App. 3d at 934. Only if the defendant satisfies the initial burden of production does the burden shift to the plaintiff to present some factual basis that would arguably entitle the plaintiff to a favorable judgment. *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805 (1998).

■ Section 9 of the Act provides, "No person may disclose or be compelled to disclose the identity of any person upon whom a test is performed, or the results of such a test[,] in a manner which permits identification of the subject of the test, except to [certain specified persons]." 410 ILCS 305/9 (West 2000). Section 10 of the Act states, "No person to whom the results of a test have been disclosed may disclose the test results to another person except as authorized by Section 9." 410 ILCS 305/10 (West 2000).

■ The plaintiff constructively admitted that she changed the negative test results of her test to reflect positive test results and that she or her husband mailed the altered HIV test results to Dr. Guillen. The fraudulent act of altering her test results notwithstanding, the plaintiff now seeks the protection of the above-quoted provisions of the Act. We begin by noting that when the plaintiff released the results which she had altered from HIV negative to HIV positive, she was not releasing the actual results of her test. More importantly, we believe that when the plaintiff fraudulently altered her test results with the

intention of releasing those altered results to a third party, she waived the confidentiality protections afforded her under the Act, at least with regard to these defendants and the allegations made in the plaintiff's complaint. We conclude that this is true regardless of whether it was the plaintiff or her husband who released the altered test results to Dr. Guillen, for it is obvious that the plaintiff made the alterations with the intention of releasing them to some third party, be it her husband or Dr. Guillen; it simply defies logic to suppose she made the alterations only for her own perusal.

We note that the purpose of the Act is "to control the spread of the HIV virus by encouraging the public to submit to voluntary testing through an assurance of confidentiality" (*In re Application of Multimedia KSDK, Inc.*, 221 Ill. App. 3d 199, 202, 581 N.E.2d 911, 913 (1991)), and we note as well that we do not believe that this purpose is in any way hindered by our ruling in this case that when the plaintiff fraudulently altered the results of her own HIV test with the intention of releasing those fraudulently altered results to a third party, she lost the confidentiality protections of the Act regarding these defendants and regarding the allegations made in the plaintiff's complaint. To the contrary, it is the abuse of the confidentiality provisions of the Act that will hinder the effectiveness of the Act. Indeed, to reach the result the plaintiff urges would be to make a mockery of the Act, allowing the plaintiff to abuse the privileges of the Act and then to potentially profit personally from so doing by bringing suit against the defendants in this action. The conversion of the Act's confidentiality shield into a sword to be brandished against those attempting to undo the damage done by the plaintiff's fraudulent actions cannot be the result our General Assembly intended when it passed the Act.

The dissent states, "Although the plaintiff released her altered HIV information to Dr. Guillen, she did not lose her privilege of confidentiality to prevent third persons, such as the defendants in this case, from independently acquiring her HIV test information and disclosing her results." 347 Ill. App. 3d at 1076. The dissent cites *Doe v. Chand*, 335 Ill. App. 3d 809, 812 (2002), to support this proposition. *Doe*, however, involved the egregious conduct of a defendant physician who intentionally leaked both the actual positive HIV test results of the plaintiff and the false and defamatory information that the plaintiff suffered from AIDS. 335 Ill. App. 3d at 824. In that case, there was no wrongdoing on the part of the plaintiff. In the case at bar, it is the behavior of the plaintiff that is egregious and fraudulent. Accordingly, we find *Doe* inapposite to the case at bar.

Having waived the protections afforded by the Act, the plaintiff may not now bring an action against these defendants under the Act.

Accordingly, the circuit court did not err in granting a summary judgment in favor of the defendants. For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

CHAPMAN, P.J., concurs.

JUSTICE HOPKINS, dissenting:

The majority holds that because the plaintiff fraudulently altered her test results and because she or her husband released those altered results to a third party, who is not a defendant in this case, she waived the confidentiality protections afforded her under the Act. I disagree.

Courts should be particularly reluctant to find that a party waived the Act's statutory privilege. See *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 729 (1998). The privilege of confidentiality is far too important to be brushed aside when, as the legislature has found, public health is served by facilitating the confidential use of tests designed to reveal HIV infection. 410 ILCS 305/2(3) (West 2000); see also *Thiele v. Ortiz*, 165 Ill. App. 3d 983, 993 (1988).

Although the plaintiff released her altered HIV information to Dr. Guillen, she did not lose her privilege of confidentiality to prevent third persons, such as the defendants in this case, from independently acquiring her HIV test information and disclosing her results. See *Doe v. Chand*, 335 Ill. App. 3d 809, 812 (2002) (the plaintiff disclosed to an acquaintance that the plaintiff's husband had given the plaintiff AIDS, but the health professional defendant was nevertheless liable for his numerous disclosures of the plaintiff's condition). Following the majority's logic, an individual who has tested positive for HIV but releases to her friends or to her family that she is not infected with the deadly virus has now lost her protections under the Act with respect to third persons who acquire and then release her actual test results. Such a result directly contravenes the purpose and language of the Act.

Allowing the release of the plaintiff's HIV information in this case erodes the express statutory exceptions contained in the Act (see *Weast Construction Co. v. Industrial Comm'n*, 102 Ill. 2d 337, 340 (1984) (the expression of certain exceptions in a statute will be construed as an exclusion of all others)) and results in opening a Pandora's box of inquiry into whether one tested for HIV released the results, what he released, and to whom. However unsympathetic we are to this plaintiff, who allegedly doctored her own HIV test results to incite fear among hospital personnel, we must honor the purpose and language of the

Act. The legislature has created the confidentiality protections as a matter of public policy, and the plaintiff's purported misuse of the privilege should not be deemed of greater importance to this court than the public policy.

The majority is attempting to legislate an application of the Act that the legislature neither wrote nor intended. I choose not to join the majority in this endeavor and respectfully dissent.