No. 2--05--1177     Filed:  4-25-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL G. ZWICKY and RITA L. ZWICKY, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04--LA--147 |
| FREIGHTLINER CUSTOM CHASSIS CORPORATION, FLEETWOOD MOTOR HOMES OF INDIANA, INC., and RAND THOMPSON, INC., d/b/a Crystal Valley RV, | ) ) ) ) ) | Honorable Michael J. Sullivan, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The plaintiffs, Michael and Rita Zwicky, brought claims against the defendants for breach of express and implied warranties and for revocation of acceptance. On October 26, 2005, the trial court granted summary judgment in favor of the defendants on all counts of the plaintiffs' complaint, finding that pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216), the plaintiffs were deemed to have made certain admissions as a result of their failure to answer requests for admissions, and that these admissions prevented them from recovering on their claims as a matter of law. On appeal, the plaintiffs argue: (1) that their failure to answer the requests for admissions should not be treated as admissions; and (2) that even if the requests for admissions are all deemed admitted, summary judgment was improper because the admissions do not preclude them from recovering on their

causes of action. For the following reasons, we affirm in part and reverse in part and remand for further proceedings.

## I. Background

On August 31, 1999, the plaintiffs Michael and Rita Zwicky purchased from the defendant Rand Thompson, Inc., d/b/a Crystal Valley RV (CVRV), a 1999 Fleetwood Discovery motor home and an extended warranty. In addition to the extended warranty, the motor home came with a limited warranty, as defined by the Magnuson-Moss Warranty--Federal Trade Commission Improvement Act (the Act) (15 U.S.C. §2301 et seq. (2000)), issued by the defendants Freightliner Custom Chassis Corporation (Freightliner) and Fleetwood Motor Homes of Indiana, Inc. (Fleetwood). Between the date they bought the motor home and September 13, 2001, the Zwickys had the motor home repaired on at least 16 separate occasions. On September 27, 2002, the Zwickys notified CVRV that they wished to revoke their acceptance of the motor home.

In October 2002, the Zwickys filed a complaint against the defendants for breach of express and implied warranties and for revocation of acceptance. On January 3, 2003, Fleetwood mailed to the plaintiffs written discovery, including interrogatories, requests to produce, and requests for admissions. Among the requests for admissions served by Fleetwood were the following statements, which Fleetwood requested that the plaintiffs either admit or deny pursuant to Supreme Court Rule 216:

"1. Plaintiffs remain in possession of the subject vehicle.

2. Plaintiffs continue to enjoy the benefits of the use of the vehicle on a regular basis.

3. Plaintiffs continue to use the subject vehicle on a regular basis.

\* \* \*

7. That the terms and conditions of the Fleetwood Motor Homes Limited Warranty, issued by Fleetwood Motor Homes, specifically excludes and limits damages for incidental and consequential damages.

8. That at the time plaintiffs sent written notification of plaintiff's [sic] revocation of acceptance, the condition of the subject vehicle had substantially changed from the time of its initial purchase or lease in that the vehicle had several thousand miles on its odometer.

9. There are presently no known defects or nonconformities with the subject vehicle.

10. That the subject vehicle has not sustained any diminution in value as a result of any repair procedure, servicing procedure, or replacement procedure performed by any vehicle dealership or repair facility.

11. That no independent Fleetwood dealership or service facility ever refused to perform repair procedures or replacement procedures on the subject vehicle."

Fleetwood did not file the proof of service for the requests for admissions, but the plaintiffs do not dispute that they received the requests for admissions in January 2003. The plaintiffs never responded to the requests for admissions.

The parties engaged in settlement discussions beginning in June 2003 but were unable to reach agreement. On October 23, 2003, the plaintiffs filed a motion for extension of time to respond to Fleetwood's requests for admissions. The trial court denied the motion on January 15, 2004. On March 1, 2004, the plaintiffs voluntarily dismissed the original complaint.

On May 21, 2004, utilizing section 13--217 of the Code of Civil Procedure (735 ILCS 5/13--217 (West 2004)), which permits voluntarily dismissed actions to be refiled within one year, the plaintiffs filed a new complaint against the defendants. They filed an amended six-count

complaint on December 3, 2004. Counts I (against Freightliner) and II (against Fleetwood) alleged breaches of express warranty pursuant to the Act (15 U.S.C. §2301, et seq. (2000)). Counts III (against Freightliner), IV (against Fleetwood), and V (against CVRV) alleged breaches of the implied warranty of merchantability pursuant to the Uniform Commercial Code (UCC) (810 ILCS 5/2--314 (West 2004)) and the Act. Count VI (against CVRV) alleged a breach of contract and sought revocation of acceptance pursuant to the UCC (810 ILCS 5/2--608 (West 2004)). On May 4, 2005, the trial court granted CVRV's motion to dismiss count V, which is not at issue on appeal.

On July 15, 2005, Fleetwood and CVRV filed a motion for summary judgment, arguing that the requests for admissions to which the plaintiffs failed to respond in the original action should be deemed admissions applicable in the current action, and that those admissions precluded the plaintiffs from maintaining the claims enumerated in the amended complaint. On August 15, 2005, Freightliner filed a motion to join in the other defendants' motion for summary judgment, essentially adopting their arguments. The summary judgment motion was fully briefed. On October 26, 2005, after a hearing at which all parties presented oral arguments, the trial court granted the motion and entered summary judgment in favor of the defendants on all counts. The plaintiffs filed a timely notice of appeal.

## II. Discussion

### Rule 216 Admissions

On appeal, the plaintiffs first contend that their failure to respond to the requests for admission served in the original action should not be construed pursuant to Supreme Court Rule 216(c) (134 Ill. 2d R. 216(c)) as admissions of the statements contained therein (Rule 216 admissions). Rule 216 states, in pertinent part:

"(a) **Request for Admission of Fact**.  A party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request.

\*\*\*

(c) **Admission in the Absence of Denial**.  Each of the matters of fact \*\*\* of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part. \*\*\*

\*\*\*

(e) **Effect of Admission**.  Any admission made by a party pursuant to request under this rule is for the purpose of the pending action and any action commenced pursuant to the authority of section 13--217 of the Code of Civil Procedure [citation] only."  134 Ill. 2d R. 216.

Under Rule 216(c), the plaintiffs' failure to respond to the requests for admissions served by Fleetwood operates as an admission of all of the statements contained in the requests.  134 Ill. 2d R. 216(c); Robbins v. Allstate Insurance Co., 362 Ill. App. 3d 540, 543 (2005).  Admissions created by the operation of Rule 216(c) are considered binding judicial admissions and thus are incontrovertible and may be cited in support of a motion for summary judgment.  Robbins, 362 Ill. App. 3d at 543.

The plaintiffs do not claim that the fact that they voluntarily dismissed their first action and subsequently refiled it defeats the application of Rule 216(c) to the requests for admissions that were served in the original action. Rule 216(e) specifically provides that any admission made pursuant to Rule 216 binds the party making the admission "for the purpose of the pending action and any action commenced pursuant to the authority of section 13--217 of the Code of Civil Procedure." 134 Ill. 2d R. 216(e). Section 13--217 of the Code of Civil Procedure permits the refiling, within one year, of any action voluntarily dismissed (735 ILCS 5/13--217 (West 2004)), and it was the authority by which the plaintiffs filed their current action. Thus, any fact admitted via Rule 216(c) in the original action remains admitted in the refiled action. 134 Ill. 2d R. 216(e).

Instead, the plaintiffs raise three arguments to support their contention that their failure to respond to the requests for admissions should not result in binding admissions. First, they note that Fleetwood failed to comply with Supreme Court Rule 12(b) (145 Ill. 2d R. 12(b)), as it did not file a copy of the proof of service for the requests for admissions. The plaintiffs argue that it is "impossible" for them to say for sure when the requests for admissions were received, because the proof of service was not filed with the clerk's office, and the attorney who had been handling the plaintiffs' case left the firm in August 2003. However, the plaintiffs concede in their opening brief that they received the requests for admissions in January 2003, along with other written discovery served at the same time. Thus, allowing 28 days to respond as provided in Rule 216(c) (134 Ill. 2d R. 216(c)), the responses were due no later than February 28, 2003. In light of the fact that the plaintiffs never responded to the requests for admissions at all, any confusion created by Fleetwood's failure to file the proof of service is irrelevant.

Second, the plaintiffs note that during settlement negotiations, Fleetwood's attorneys apparently stated that they would try to settle the case before engaging in any further discovery and that they would not "hammer" the plaintiffs regarding their failure to respond to the requests for admissions but were still willing to pursue settlement. The plaintiffs ask this court to find either that these statements estop the defendants from using the Rule 216 admissions in the current case, or that the statements serve as a waiver of the defendants' right to use the admissions. "Estoppel arises when a party, by his words or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position to his injury." Schwinder v. Austin Bank of Chicago, 348 Ill. App. 3d 461, 472 (2004). Here, Fleetwood's statements during settlement negotiations cannot be held to have induced the plaintiffs to forgo responding to the requests for admissions, because the responses to the requests were due by the end of February, but the settlement negotiations in which the statements were made did not begin until June 2003. Thus, the plaintiffs cannot show the detrimental reliance that would be necessary for estoppel to apply.

Nor is the waiver doctrine applicable. "Waiver is the voluntary and intentional relinquishment of a known right inconsistent with an intent to enforce that right." R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co., 358 Ill. App. 3d 912, 922 (2005). The party claiming the waiver has the burden of proving a clear, unequivocal, and decisive act by the other party manifesting an intention to waive its rights. In re Nitz, 317 Ill. App. 3d 119, 130 (2000). Neither of the statements allegedly made by Fleetwood's attorneys demonstrates a clear and unequivocal relinquishment of the right to use the Rule 216 admissions in future litigation. The statements show (1) a desire to resolve the litigation, if possible, before engaging in additional

discovery, but no intent to disregard past discovery; and (2) Fleetwood's willingness to pursue a settlement that would be fair to both parties despite the strategic advantage it had by virtue of the plaintiffs' Rule 216 admissions. Thus, neither estoppel nor waiver applies here.

The plaintiffs' final basis for arguing that the Rule 216 admissions should not be binding against them is that the requests for admissions were not proper in form, i.e., rather than containing statements of specific fact to be admitted or denied, they contained "generic" statements that were not specific to the case at hand and required the plaintiffs to make "inferential leaps" in order to respond. The plaintiffs are correct that Rule 216 permits parties to serve "[r]equest[s] for [a]dmission[s] of [f]act" (emphasis added) (134 Ill. 2d R. 216(a)), and requests that contain conclusions of law instead of statements of specific fact will not be deemed to be admissions regardless of the response to such requests. P.R.S. International, Inc. v. Shred Pax Corp., 184 Ill. 2d 224, 239 (1998) (requests for admissions of legal conclusions are improper and will not give rise to "admissions" under Rule 216, but requests that are limited to questions of fact are proper, even if they relate to ultimate facts). Here, our review of Fleetwood's requests for admissions reveals that they contain only reasonably clear statements of fact, not conclusions of law or other material outside the scope of Rule 216. Thus, we decline to find that the requests for admissions were not in the proper form to serve as judicial admissions by the plaintiffs.

In sum, we reject all of the plaintiffs' arguments against treating their failure to respond to the requests for admissions as creating judicial admissions, and we hold that the trial court correctly treated the Rule 216 admissions as binding on the plaintiffs. We now turn to the second issue raised on appeal: whether the Rule 216 admissions supported the entry of summary judgment in favor of the defendants.

We review appeals from the entry of summary judgment <u>de novo</u>. <u>Home Insurance Co. v. Cincinnati Insurance Co.</u>, 213 Ill. 2d 307, 315 (2004). Summary judgment is appropriate only where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. <u>Fiumetto v. Garrett Enterprises, Inc.</u>, 321 Ill. App. 3d 946, 958 (2001). In determining whether the trial court properly granted summary judgment, we must construe the record liberally in favor of the opposing party and strictly against the movant. <u>Fiumetto</u>, 321 Ill. App. 3d at 958. Because it is a drastic means of disposing of litigation, it should be granted only where the movant's right to judgment is clear and free from doubt. <u>Fiumetto</u>, 321 Ill. App. 3d at 958.

Breach of Express Warranty

The first cause of action contained in the amended complaint is for breach of express warranty, brought pursuant to the Act (15 U.S.C. §2301 <u>et</u> <u>seq.</u> (2000)). The Act provides a consumer with a private cause of action against a manufacturer or retailer that fails to comply with the Act or the terms of a written warranty or any implied warranty arising therefrom. 15 U.S.C. §2310(d) (2000). When the Act does not conflict with state law governing the sale of consumer products, state law applies. <u>Bartow v. Ford Motor Co.</u>, 342 Ill. App. 3d 480, 484 (2003). If the written warranty in question is a limited warranty, Illinois law governs the claim. <u>Razor v. Hyundai Motor America</u>, 222 Ill. 2d 75, 85-86 (2006) ("the Act does not set out requirements for limited warranties" and so state law applies); <u>cf.</u> <u>Mydlach v. DaimlerChrysler Corp.</u>, 364 Ill. App. 3d 135, 148-51 (2005) (issued before <u>Razor</u>; applying the Act to determine when a claim for breach of limited written warranty accrues and in the process holding that section 2310(d) of the Act provides a private cause of action for breach of limited warranty); <u>Mattuck v. DaimlerChrysler Corp.</u>, 366 Ill. App. 3d 1026, 1035 & n.3 (2006) (issued after <u>Razor</u>; acknowledging the supreme court's statement

in Razor, but declining to "sua sponte read that isolated statement to indicate that portions of the Act, such as section 2310(d) in particular, do not apply to limited warranties" and continuing to follow Mydlach). In moving for summary judgment on the breach of warranty claims, the defendants argued that the plaintiffs could not recover under the Act as a matter of law because of the Rule 216 admissions. Specifically, the defendants contended that two of the plaintiffs' Rule 216 admissions-- that "the subject vehicle has not sustained any diminution in value as a result of any repair procedure, servicing procedure, or replacement procedure performed by any vehicle dealership or repair facility" (Admission number 10) and that "[t]here are presently no known defects or nonconformities with the subject vehicle" (Admission number 9)--precluded the plaintiffs from recovering under the Act. The defendants noted that the written warranty was a limited "repair or replace" warranty, which limits the consumer's remedy to repair or replacement of the defective part, and pointed out that they had performed multiple repairs on the motor home. The defendants argued that the two admissions identified above, taken together with the defendants' repairs of the motor home, amounted to an admission that the plaintiffs had not sustained any damages at all as a result of the claimed defects. The defendants concluded by arguing that, in the absence of damages, the plaintiffs could not recover on either the breach of express warranty or the breach of implied warranty claims. Following the hearing on summary judgment, the trial court implicitly adopted the defendants' arguments, stating (after finding that the plaintiffs were bound by the Rule 216 admissions): "As far as the substantive issues of the motions for summary judgment, the court finds that the motion is well taken and I will grant the motion."

Although damages are an essential element of both claims--breach of express warranty and breach of implied warranty of merchantability--different factors are relevant to damages under the

two claims, and so we consider them separately. We review the breach of express warranty claims first. When determining the scope of the remedy and the damages available for the breach of a written warranty, we begin by looking at the terms of the warranty. Here, the motor home came with a written warranty that expressly limited the relief available under it in two respects: it limited the buyer's remedy for defects to repair and replacement of nonconforming parts; and it excluded any recovery for consequential damages (damages caused by the defects).

Under certain circumstances, limitations such as these may be ineffective. If the repair or replacement of the defective parts takes an unreasonable amount of time or number of attempts, then under section 2--719(2) of the UCC (810 ILCS 5/2--719(2) (West 2004)), the limited warranty may be found to have "fail[ed] of its essential purpose" of adequately remedying the defects, and the buyer may be entitled to seek other remedies available under the UCC. Razor, 222 Ill. 2d at 87; Mattuck, 366 Ill. App. 3d at 1035-36. Similarly, under section 2--719(3) of the UCC, the exclusion of consequential damages may not be enforceable if it is unconscionable. Razor, 222 Ill. 2d at 87. Our supreme court recently clarified that these two attacks on warranty limitations must be proved separately and independently. That is, if both types of warranty limitations are contained in a written warranty, a plaintiff must prove both an unreasonable amount of time or number of attempts to repair (to overcome the restriction on repair or replacement as the sole remedy) and that it would be unconscionable to enforce the exclusion of consequential damages (to overcome that exclusion). Razor, 222 Ill. 2d at 98-99. If a plaintiff can successfully attack the limitations in the warranty, he is entitled to seek the damages otherwise available under the UCC: " 'the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different

amount.' " Razor, 222 Ill. 2d at 106, quoting 810 ILCS 5/2--714(2) (West 2000); Mattuck, 366 Ill. App. 3d at 1034 (same).

Bearing these principles in mind, we turn to an examination of whether the Rule 216 admissions identified by the defendants preclude recovery for breach of the express warranty at issue here as a matter of law. In Admission number 9, the plaintiffs admitted that "[t]here are presently no known defects or nonconformities with the subject vehicle." Admission number 10, that "the subject vehicle has not sustained any diminution in value as a result of any repair procedure, servicing procedure, or replacement procedure performed by any vehicle dealership or repair facility," simply means that the defendants did not cause any additional diminution of value to the motor home through their repair procedures.

The defendants urge us to read Admission number 10 more broadly, to include an admission that no damages were caused by their failure to repair the vehicle properly or within a reasonable amount of time or number of attempts, but we decline to do so. There is no legal basis for looking beyond the plain and ordinary meaning of the words used in a request for admission. Here, the defendants requested an admission that the motor home had not suffered any loss of value as a result of the repair procedures, not an admission that there were no damages caused by the defendants' alleged failure to make timely repairs. The plaintiffs' admission of this statement is limited to the words of the statement itself, i.e., those damages caused by the repair procedures themselves.

The Rule 216 admissions do not prevent the plaintiffs from proving any necessary component of their claims for damages. Even with these admissions, the plaintiffs can still introduce evidence: (1) that the limited "repair or replace" warranty failed of its essential purpose because the amount of time or number of attempts necessary to repair the defects was unreasonable; (2) that the exclusion

of consequential damages would be unconscionable; and (3) regarding the difference between the value of the motor home as warranted and as actually received at the time and place of acceptance. See, e.g., Pearson v. DaimlerChrysler Corp., 349 Ill. App. 3d 688, 697-98 (2004) (even where the plaintiff conceded that no actionable defects in his motor vehicle remained following the defendant's repair attempts, summary judgment was improper if there were factual questions regarding whether the repairs were made within a reasonable time or number of attempts); Lara v. Hyundai Motor America, 331 Ill. App. 3d 53, 62 (2002) (plaintiff could still seek damages for breach of written limited warranty where the vehicle had been repossessed and therefore could no longer be repaired under the "repair or replace" warranty, if the seller "unreasonably delay[ed] the replacement of the product, refuse[d] to replace it at all, or [was] unsuccessful in correcting the defects" within a reasonable time). Moreover, the admission that "there are presently no known defects" in the motor home does not preclude the plaintiffs from showing that defects existed at the time they received the motor home. August 31, 1999 (the date of acceptance, i.e., the date the plaintiffs received the motor home), is the relevant date for calculating damages under the UCC (810 ILCS 5/2--714(2) (West 2004)), and the admission that the motor home had no defects on a later date (in February 2003, when the plaintiffs failed to respond to the requests for admissions) does not bar the plaintiffs from showing that defects existed when they received the motor home. Pearson, 349 Ill. App. 3d at 696.

Finally, we note that the plaintiffs' failure to allege in their complaint that the exclusion of consequential damages was unconscionable is not fatal. In Razor, the plaintiff likewise had failed to include any allegations regarding unconscionability, but that did not prevent the court from considering the issue. Razor, 222 Ill. 2d at 104 & n.4. The court then went on to hold that the exclusion was unenforceable where the warranty was preprinted in the vehicle's operating manual

without input from the consumer, the warranty was intended to limit the drafter's liability, and there was evidence that the purchaser never saw the warranty until after she signed the sale contract. Razor, 222 Ill. 2d at 100-01. The complaint here suggests that at least some of these facts may exist in the present case, although we make no determination on that issue. We simply hold that despite the Rule 216 admissions, factual issues remain that prevent the entry of summary judgment on the plaintiffs' claims in counts I and II for breach of express warranty.

### Breach of Implied Warranty

We next consider the viability of the plaintiffs' claims for breach of implied warranty (counts III and IV of the amended complaint), in light of the Rule 216 admissions. A product breaches the implied warranty of merchantability if it is not " 'fit for the ordinary purposes for which such goods are used.' [Citation.]" Alvarez v. American Isuzu Motors, 321 Ill. App. 3d 696, 703 (2001). With regard to motor vehicles, " '[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects.' [Citation.]" Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc., 342 Ill. App. 3d 150, 159 (2003). The plaintiffs may recover damages for breach of an implied warranty of merchantability if they can prove that the motor home was defective and that the defects existed when the motor home left the defendants' control. Alvarez, 321 Ill. App. 3d at 702-03. The measure of damages recoverable for the breach of an implied warranty of merchantability is once again "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 810 ILCS 5/2--714(2) (West 2004). Just as with a claim for breach of express warranty, the legal focus is on the defects in the vehicle as of the date of acceptance, not at the later time when the

requests for admissions were served, and thus the Rule 216 admissions do not negate the damages element (or any other element) of the plaintiffs' claims for breach of implied warranty. We thus reverse the grant of summary judgment on these claims as well.

Revocation of Acceptance

Our final review is of the summary judgment entered for the defendants on count VI, which was labeled as a claim for "revocation of acceptance" against CVRV, which sold the plaintiffs the motor home at issue. The defendants first argue that "revocation of acceptance" is merely a type of remedy available under the UCC for breach of warranty, and that the plaintiffs' right to such revocation must fall when the breach of warranty claims fall. Of course, this argument itself fails due to our reversal of summary judgment on the breach of warranty claims.

However, the defendants also contend that the plaintiffs are barred from revoking their acceptance of the motor home because, in Rule 216 Admission number 8, the plaintiffs admitted "[t]hat at the time plaintiffs sent written notification of plaintiff's [sic] revocation of acceptance, the condition of the subject vehicle had substantially changed from the time of its initial purchase or lease in that the vehicle had several thousand miles on its odometer." Section 2--608 of the UCC provides that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." 810 ILCS 5/2--608(2) (West 2004).

If the existence of "substantial change" in the vehicle's condition were the only relevant factor here, the defendants' entitlement to summary judgment would be clear, because the plaintiffs have (by operation of law) admitted that at the time they sought revocation, the condition of the motor home had "substantially changed" in that it had several thousand miles on its odometer. This

admission is a judicial admission, and the plaintiffs are barred from offering contrary evidence at trial or at any other point during the course of the case. Robbins v. Allstate Insurance Co., 362 Ill. App. 3d 540, 543 (2005), citing In re Yamaguchi, 118 Ill. 2d 417, 424 (1987), and Ellis v. American Family Mutual Insurance Co., 322 Ill. App. 3d 1006, 1010 (2001). However, as this court has noted, "[e]xceptions exist; thus, the continued use of goods will not, in all circumstances, bar revocation. For example, where ceasing use of the goods would cause undue hardship to the buyer, continued use may not preclude revocation." Basselen v. General Motors Corp., 341 Ill. App. 3d 278, 283 (2003). Thus, if the plaintiffs put forth evidence showing that there was some compelling reason for their continued use of the motor home, the fact that there had been such continued use (and therefore the increase in mileage that created the substantial change) would not necessarily bar them from revoking their acceptance of the motor home.

The plaintiffs bear the burden of proving the existence of some exception to the rule that substantial change bars revocation, and generally of proving that the continued use was reasonable under the circumstances. See Basselen, 341 Ill. App. 3d at 283. Accordingly, in order to defeat a motion for summary judgment, the plaintiffs must show the existence of facts that could support judgment in their favor on this issue. "[A]lthough the nonmoving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment." Land v. Board of Education of the City of Chicago, 202 Ill. 2d 414, 432 (2002).

Here, in their motion for summary judgment, the defendants raised the effect of the plaintiffs' Rule 216 admission regarding substantial change. In response, the plaintiffs provided no affidavits or other evidence suggesting that their continued use of the motor home, and its accumulation of

"several thousand miles on the odometer," was reasonable under the circumstances. Indeed, the plaintiffs provided the trial court with no information at all on this point, such as: how much mileage was actually on the odometer in February 2003; whether they continued to use the motor home, and if so, for what purposes; and so on. In the absence of any such evidence, the plaintiffs have failed to carry their burden to show that they could prevail at trial on their claim for revocation of acceptance. See Land, 202 Ill. 2d at 432; see also Basselen, 341 Ill. App. 3d at 284 (affirming grant of summary judgment where plaintiffs provided no basis on which a finder of fact could conclude that their continued use of the vehicle was reasonable under the circumstances). We affirm the trial court's grant of summary judgment in CVRV's favor on count VI.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County as to count VI; we reverse the judgment of the circuit court of McHenry County as to counts I, II, III and IV; and we remand for further proceedings consistent with this decision.

Affirmed in part and reversed in part; cause remanded.

HUTCHINSON and BYRNE, JJ., concur.