Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/20/2017 09:13 AM CDT

- 331 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

Jimmy R. Barnes, Jr., appellant, v.
American Standard Insurance
Company of Wisconsin, appellee.

___ N.W.2d ___

Filed July 28, 2017.    No. S-16-854.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.

4. **Summary Judgment.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.

5. ____. Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.

6. ____. If a genuine issue of fact exists, summary judgment may not properly be entered.

7. **Insurance: Contracts: Proof.** The burden of establishing an effective cancellation before a loss is on the insurer.

8. **Statutes: Intent: Service of Process.** It is the intent of Neb. Rev. Stat. § 44-516 (Reissue 2010) to require registered or certified mail for every cancellation notice within its purview. The requirement of registered or certified mail facilitates proof of receipt of notice.

9. **Insurance: Notice.** There is no requirement in Neb. Rev. Stat. § 44-516 (Reissue 2010) that the insured actually receive notice.

- 332 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

10. **Statutes: Presumptions: Legislature: Intent.** In construing a statute, it is presumed that the Legislature intended a sensible, rather than absurd, result.
11. **Insurance: Service of Process: Notice: Legislature: Intent: Proof.** By using registered or certified services as required in Neb. Rev. Stat. § 44-516 (Reissue 2010), the Legislature relieved the insurer of proving that a notice of cancellation was received.

Appeal from the District Court for Douglas County: Duane C. Dougherty, Judge. Reversed and remanded for further proceedings.

Daniel L. Rock and Jordan E. Holst, of Ellick, Jones, Buelt, Blazek & Longo, L.L.P., for appellant.

Jane D. Hansen for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Jimmy R. Barnes, Jr., the appellant, was in a motorcycle-motor vehicle accident. American Standard Insurance Company of Wisconsin (American Standard) asserted that Barnes' motorcycle insurance policy had been canceled prior to the accident and denied underinsured coverage to Barnes. Barnes filed a complaint with a jury demand in the district court for Douglas County in which he claimed wrongful denial of coverage. The parties filed cross-motions for partial summary judgment. After a hearing, the district court granted American Standard's motion for partial summary judgment, denied Barnes' motion for partial summary judgment, and dismissed Barnes' complaint with prejudice. Barnes appeals. We reverse, and remand for further proceedings.

## STATEMENT OF FACTS

On June 7, 2013, Barnes entered into three motor vehicle insurance policies with American Standard, including

insurance policy No. 2171-0924-03, which insured a motorcycle and included underinsured motorist coverage. According to American Standard's evidence, it prepared three cancellation notices for Barnes' three motor vehicle policies on September 18, 2013, because either the bank account from which American Standard electronically withdrew Barnes' monthly premium payments had insufficient funds for the payments or the bank had rejected the transaction at the time that the premiums were due. The notices were addressed to Barnes at his mailing address and stated that the three policies would be canceled effective October 1 unless the premiums were paid. American Standard contends that it mailed Barnes' automobile insurance cancellation notices by certified mail. Barnes alleged that he did not receive the cancellation notices.

On October 10, 2013, Barnes was struck by an underinsured motorist while riding his motorcycle. Barnes sustained injuries as a result of the accident. He received $100,000 from the underinsured motorist's insurance provider. Barnes alleged that his damages were in excess of this amount, so he made a claim for underinsured motorist coverage under his American Standard motorcycle policy, which he believed was still in force at the time of the accident. American Standard contended that the policy was not in force at the time of the accident and denied the claim.

On September 16, 2015, Barnes filed his complaint with a jury demand against American Standard. He alleged that the policy covering the motorcycle was in force at the time of the accident, and he sought damages and attorney fees. On October 7, American Family filed its answer generally denying the allegations in the complaint.

American Standard filed a motion for partial summary judgment, in which it stated that it was moving for summary judgement "on the issue of whether notice of cancellation was sent by certified mail." Barnes also filed a motion for partial summary judgment, in which he stated that he was entitled to judgment as a matter of law regarding his claim for insurance

benefits. Barnes stated that he was not seeking summary judgment regarding the question of damages.

A hearing was held on April 25, 2016. At the hearing, Barnes offered and the district court received exhibits 1 through 11, which included: Barnes' affidavit; blank U.S. Postal Service forms 3811 and 3800; a copy of American Standard's mailing log on postal service form 3877 (Form 3877) dated September 18, 2013; American Standard's responses to Barnes' request for production of documents; and the cancellation notices dated September 18, 2013. American Standard offered and the district court received exhibits 12 through 20, which included: cancellation notices; two affidavits from American Standard employees regarding mailing procedures; documents regarding American Standard's policy cancellation procedure; a demonstrative envelope used to illustrate certified mail; a copy of American Standard's mailing log Form 3877 dated September 18, 2013; and a U.S. Postal Service certificate of mailing for a piece of first-class mail relating to Barnes' homeowner's policy dated September 18, 2013.

Barnes and American Standard each offered Form 3877, which indicated that three pieces of mail were sent to Barnes. Form 3877 has a space to indicate what type of service was applied to the mail, but the box for "Certified" was not checked. Form 3877 has a space where the sender is to include the addressee's information, and it states, "Addressee (*Name, Street, City, State, & ZIP Code*)." (Emphasis in original.) American Standard supplied Barnes' name, city, state, and ZIP Code on Form 3877, but it did not include his street or house number. Form 3877 contains the postmaster's stamp, date, tracking numbers, fees, and postal worker's signature.

On August 12, 2016, the district court filed its "Order on Cross-Motions for Partial Summary Judgment." The district court cited Neb. Rev. Stat. § 44-516(1) (Reissue 2010), which provides that "[n]o notice of cancellation of a policy . . . shall be effective unless mailed by registered or certified mail to the named insured . . . ." The district court noted that § 44-516

- 335 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

does not require American Standard to establish that Barnes received the cancellation notice; however, it requires that American Standard prove it mailed the cancellation notice to Barnes by registered or certified mail.

In its ruling, the district court noted that in the context of federal tax cases, other courts have determined that Form 3877 is an accepted method to prove that an item is sent by certified mail. The district court noted the defects in Form 3877, but nevertheless determined that the "majority of the evidence in this case establishes that [American Standard] complied with Neb. Rev. Stat. § 44-516 by sending the cancellation notice to [Barnes] via certified mail on September 18, 2013." The district court therefore granted American Standard's motion for partial summary judgment, denied Barnes' motion for partial summary judgment, and dismissed Barnes' complaint with prejudice.

Barnes appeals.

## ASSIGNMENTS OF ERROR

Barnes claims, summarized and restated, that the district court erred when it found that American Standard sent a cancellation notice to Barnes by certified mail in compliance with § 44-516 and granted American Standard's motion for partial summary judgment, denied Barnes' motion for partial summary judgment, and dismissed Barnes' complaint with prejudice when the matter was before the court on cross-motions for partial summary judgment and "discovery was leading to an alternate theory of recovery."

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Midland Properties v. Wells Fargo*, 296 Neb.

- 336 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

407, 893 N.W.2d 460 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

The centerpiece of our analysis is § 44-516(1), which both parties agree is controlling. Section 44-516(1) provides in relevant part as follows:

> No notice of cancellation of a policy to which section 44-515 applies shall be effective unless mailed by registered or certified mail to the named insured at least thirty days prior to the effective date of cancellation, except that if cancellation is for nonpayment of premium, at least ten days' notice of cancellation accompanied by the reason therefor shall be given.

American Standard filed a motion for partial summary judgment in which it sought judgment in its favor "on the issue of whether notice of cancellation was sent by certified mail." Barnes filed a motion for partial summary judgment seeking a judgment in his favor to the effect that American Standard was liable to him on the insurance policy. Following receipt of evidence on the cross-motions for summary judgment, the district court filed its order on August 12, 2016. As noted above, the district court granted American Standard's motion for partial summary judgment, denied Barnes' motion for partial summary judgment, and dismissed Barnes' complaint with prejudice. Barnes claims that the district court's decision was error, and we agree.

The parties offered and the district court received various items of evidence at the summary judgment hearing. The evidence included Barnes' affidavit, in which he stated that he did not receive the cancellation notice by certified mail or otherwise and that at the time of the October 10, 2013, collision, he believed the policy was in full force and effect. The

- 337 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

evidence presented by American Standard included affidavits and documents regarding its mailing procedures; notices of cancellation addressed to Barnes; and Form 3877, also known as a Certificate of Mailing. Although not a witness to the actual mailing of the notice of cancellation, in her affidavit, a mail clerk for American Standard describes the procedure that "would" have been followed and offers her belief that the notice was sent via certified mail. Although she states that the fee on Form 3877 indicates certified service, she does not state it is consistent only with certified service. American Standard also offered a demonstrative exhibit consisting of an envelope with a certified mail label on it to illustrate the appearance of a certified mail envelope.

The parties and the court dedicate considerable attention to Form 3877 and its defects. In its decision, the district court acknowledges that American Standard failed to check the certified box and neglected to include Barnes' street address on Form 3877. The district court stated this was "problematic." The district court reasoned, however, that the defects could be overcome by American Standard's presentation of other evidence showing American Standard's ordinary mailing procedures and that other notices mailed to Barnes bore a street address.

Referring to evidence presented by American Standard, the district court stated that the corroborating American Standard employee affidavit evidence "suggests that procedures for sending certified mail were followed" and that the street address on the cancellation notices on policies not at issue in this case "creates a strong inference that the cancellation[] notices were all sent to the same address." Based on the inferences, the district court found that the "majority of the evidence in this case establishes that [American Standard] complied with Neb. Rev. Stat. § 44-516 by sending the cancellation notice to [Barnes] via certified mail on September 18, 2013." As explained below, by giving inferences favorable to American Standard, we believe the district court failed to

- 338 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

adhere to summary judgment standards and, therefore, its decision was error.

[3-6] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Brock v. Dunning*, 288 Neb. 909, 854 N.W.2d 275 (2014). In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Id*. Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Id*. If a genuine issue of fact exists, summary judgment may not properly be entered. *Id*. We apply these principles to the instant case.

As noted above, for notice of cancellation to be effective under § 44-516(1), the notice must be "mailed by registered or certified mail to the named insured." The question posed by American Standard's motion for partial summary judgment was whether the notice of cancellation was mailed by certified mail. Given the foregoing, whether American Standard fulfilled its statutory duty to mail the notice by certified mail was the central material fact raised by American Standard's motion for partial summary judgment.

[7] In a case involving an insurer's compliance with a statutory requirement of notification prior to cancellation, we stated that "the burden of establishing an effective cancellation before a loss is on the insurer." *Daniels v. Allstate Indemnity Co.*, 261 Neb. 671, 679, 624 N.W.2d 636, 643 (2001). In *Daniels*, we reversed the district court's order granting summary judgment in favor of the insurer. As in *Daniels*, once the statutory notice requirement was implicated in the instant case, it was American Standard's burden to demonstrate compliance therewith in order to show that it was entitled to judgment as a matter of law. There is no actual direct evidence that the notice of cancellation was mailed certified to Barnes, and in the procedural context of a motion

- 339 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

for summary judgment, we believe the weight to be accorded American Standard's other evidence must await resolution at trial. See *Houska v. City of Wahoo*, 235 Neb. 635, 456 N.W.2d 750 (1990).

[8] Our analysis focuses on the controlling statute, § 44-516. We have previously considered § 44-516, and we stated as follows:

> In 1972, in response to a growing national concern over arbitrary policy cancellations and nonrenewals, the Nebraska Legislature adopted a statutory scheme dealing with automobile insurance policy cancellations patterned after some model legislation proposed by certain insurance trade organizations. In 1973, it added the requirement that the cancellation notice must be mailed by registered or certified mail. . . .
>
> It is clear to us that the intent of the Legislature in the passage of these sections was to clear up confusion in the area of automobile insurance policy cancellation, not to further it. . . . We are satisfied it is the intent of section 44-516, R. R. S. 1943, to require registered or certified mail for every cancellation notice [within its purview.]
>
> The requirement of registered or certified mail facilitates proof of receipt of notice.

*Sanders v. Mittlieder*, 195 Neb. 232, 236, 237 N.W.2d 838, 840 (1976).

[9,10] As we have stated above, § 44-516(1) provides that "[n]o notice of cancellation of a policy to which section 44-515 applies shall be effective unless mailed . . . certified mail to the named insured . . . ." There is no requirement in the statute that the insured actually receive notice. In construing a statute, it is presumed that the Legislature intended a sensible, rather than absurd, result. See *In re Adoption of Chase T.*, 295 Neb. 390, 888 N.W.2d 507 (2016). The provision in this statute sets forth precisely what requirement must be satisfied in order to successfully accomplish mailing

and, hence, cancellation. Thus, where the certified box on Form 3877 is checked, proof of certified mailing is greatly enhanced. And we have only to apply the requirement to the facts at hand. Applying the plain, direct, and unambiguous language of § 44-516(1), if the notice of cancellation was mailed to Barnes by certified mail, then the cancellation would become effective in the number of days thereafter provided elsewhere in the statutes.

We considered a circumstance similar to the instant case in *Houska v. City of Wahoo, supra*, where there was an absence of direct proof of actually "sending [the particular letter] by ordinary mail" as prescribed by the relevant statute, Neb. Rev. Stat. § 76-710 (Reissue 2009). On appeal, we reversed the summary judgment entered in favor of the defendant.

The plaintiff in *Houska* contended that the absence of direct evidence of compliance with the statute completely defeated the defendant's assertion that it had complied with the statutory mailing requirement. We rejected the plaintiff's contention and instead stated that proof of compliance could be proved by alternative evidence, such as direct proof pertaining to the particular letter in question or related to the deposit of the particular letter with the U.S. Postal Service, or sufficient competent evidence demonstrating adherence to a customary mailing procedure where letters which are properly addressed and stamped are handled in a manner whereby the particular letter would have been transmitted in accordance with the statute on the particular date of the alleged mailing. We stated in *Houska* that evidence showing office custom was followed in connection with the particular letter creates an inference that the particular letter comported with the statute, but that nevertheless, compliance with the statute presented a question for the trier of fact to decide. In the instant case, Barnes had demanded a jury trial, so a jury, not the court, would be the trier of fact. In *Houska*, the record was insufficient to determine as a matter of law that the method of sending the particular letter in question comported

with § 76-710, thus creating a genuine issue of material fact preventing summary judgment. As in *Houska*, we believe that in the absence of direct proof of compliance, it is proper for the finder of fact in the instant case to consider alternative evidence when it ultimately resolves the issue of compliance with § 44-516.

As we read its order, contrary to the principles controlling resolution of summary judgment motions recited above, the district court evaluated the evidence, including alternative evidence, and resolved factual issues by taking the inferences in favor of the moving party rather than the nonmoving party. As an example, the district court found, inter alia, that the information found on the two Forms 3877 "show that three articles were sent to [Barnes] with tracking numbers indicating that the items were sent via certified mail." We believe there is no basis in this record to conclude that tracking numbers alone establish certified mail service, and in any event, it is inappropriate to infer such fact in American Standard's favor.

As the district court's order acknowledges, American Standard failed to check the certified box on Form 3877. In finding that this significant defect was overcome by American Standard's evidence, the district court relied heavily on tax cases where defects in Form 3877 are common. But we believe the district court's reliance on the tax cases was misplaced.

The primary tax case on which the district court relied in its order granting summary judgment in favor of American Standard is *Coleman v. C.I.R.*, 94 T.C. 82 (1990). That tax case is in agreement with other authorities that state that a properly and fully completed Form 3877 is preferable proof and entitles the mailer to a presumption of regularity. See *United States v. Ahrens*, 530 F.2d 781 (8th Cir. 1976). But a failure to comply with Form 3877's requirements do not merit the presumption. *Coleman v. C.I.R., supra*.

The issue in *Coleman* was whether the deficiency sought by the tax commissioner was time barred as asserted by the

taxpayers as an affirmative defense due to the allegedly tardy mailing of the tax commissioner's notice of deficiency. In the instant case, the district court cited *Coleman* and found that the defective Form 3877, combined with American Standard's corroborating habit evidence, established that the mailing to Barnes complied with the statutory requirement of certified mail. However, the lesson and application of *Coleman* is not as broad as characterized by the district court.

In *Coleman v. C.I.R., supra*, the tax court had previously denied summary judgment on the issue of timely mailing and ordered a trial on this question. *Coleman* was not a summary judgment case; instead, it was decided after trial where the disputed facts were ripe for resolution. See *Wiley v. U.S.*, 20 F.3d 222 (6th Cir. 1994) (reversing summary judgment in favor of government). Furthermore, as the opinion in *Coleman* explains, the burden of persuasion regarding the timeliness of mailing was always on the taxpayers asserting the affirmative defense that the action was barred by the statute of limitations. Therefore, although the tax commissioner's evidence of a defective Form 3877 and habit evidence carried its burden of production, ultimately, it was the taxpayers' failure to present persuasive evidence of an untimely notice that entitled the tax commissioner in *Coleman* to prevail at trial. See, similarly, *Cropper v. C.I.R.*, 826 F.3d 1280 (10th Cir. 2016) (affirming judgment in favor of government after stipulated trial).

In contrast to *Coleman v. C.I.R., supra*, the posture of the instant case must be determined by summary judgment standards, where the inferences are taken in favor of Barnes as the nonmoving party. Whereas the taxpayers in *Coleman* had the burden at trial to establish the nonoccurrence of statutory timely mailing, Barnes was not required to prove the nonoccurrence of statutorily required certified mail; instead, upon its motion for summary judgment, American Standard bore the burden to show that its notice to Barnes had met its statutory duty of a certified mailing and that it was entitled

- 343 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

to judgment as a matter of law. Following our review of the record, we believe that the evidence offered by American Standard did not entitle it to judgment.

We find the cases involving disputed insurance claims more helpful than the tax cases. These cases explore the significance of the terms used by the U.S. Postal Service. In *Horton v. Washington Cty. Tax Claim Bureau*, 623 Pa. 113, 81 A.3d 883 (2013), the Supreme Court of Pennsylvania explained that the types of mailing and different services added to the mailing, such as certified mail and tracking, are contained and defined in the Code of Federal Regulations as incorporated by the U.S. Postal Service's Domestic Mail Manual. See, also, 39 C.F.R. § 111.1 (2016). Form 3877 is characterized as a "'Certificate of Mailing.'" See *Horton v. Washington Cty. Tax Claim Bureau*, 623 Pa. at 126, 81 A.3d at 891. A certificate of mailing offers the sender "'evidence that you sent the item when you say you did. This official record shows the date your mail was accepted. Certificates of mailing furnish evidence of mailing only.'" *Id.* Form 3877, standing alone and without the certified box checked off, "'furnish[es] evidence of mailing only,'" see *id.*; it does not directly prove the mail had other services attached. In the district court's order on summary judgment, it referred to the Form 3877 at issue on which the certified box is not checked and Barnes' street address is missing, but did bear a tracking number. Despite the limited evidentiary weight of the Form 3877, the district court stated that "tracking numbers indicat[e] that the items were sent via certified mail." This determination tending to equate tracking numbers with certified mail is not supported by the record or the U.S. Postal Manual, and, as we noted above, further exhibits the district court's erroneous approach giving inferences to the moving party instead of the nonmoving party on summary judgment.

We find informative the reasoning in the opinion of the Supreme Court of Illinois in *Ragan v. Columbia Mut. Ins. Co.*, 183 Ill. 2d 342, 701 N.E.2d 493, 233 Ill. Dec. 643 (1998),

interpreting an insurance cancellation notification statute. The Illinois Insurance Code requires that an insurance "company shall maintain proof of mailing of such notice [of cancellation] on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service." See 215 Ill. Comp. Stat. Ann. 5/143.14(a) (LexisNexis Cum. Supp. 2009). The *Ragan* decision, which granted summary judgment in favor of the insured, was quoted at length in *Hunt v. State Farm Mutual Automobile Insurance Co.*, 2013 IL App (1st) 120561, ¶ 36, 994 N.E.2d 561, 570-71, 373 Ill. Dec. 792, 801-02 (2013), as follows:

[T]he supreme court stated "[i]t is apparent from the wording of the provision in the context of the Insurance Code that the purpose of the statute is to protect the insured from cancellation of his insurance without his knowledge. To accomplish this purpose, the legislature could have required insurance companies to prove receipt by the insured. But, by enacting this section, the legislature clearly sought to strike a balance between the interest of the insured in being informed of a cancellation of his insurance policy and the burden that would be put on an insurance company to prove receipt by the insured." [*Ragan v. Columbia Mut. Ins. Co.*, 183 Ill. 2d] at 351[, 701 N.E.2d 497, 233 Ill. Dec. at 647]. In striking a balance between insured persons and insurers, the legislature gave insurance companies a "very low threshold of proof" relating to the mailing of cancellation notices, requiring only that the insurer show proof of mailing on a recognized United States Post Office form or form acceptable to the United States Post Office or other commercial mail delivery service. *Id*. at 351-52[, 701 N.E.2d at 497, 233 Ill. Dec. at 647]. The court then held that a finding that "the statute implicitly allows an insurance company to use other evidence to show it maintained the proof of mailing when the statute explicitly requires it to maintain such a form would disturb the

- 345 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
BARNES v. AMERICAN STANDARD INS. CO. OF WIS.
Cite as 297 Neb. 331

balance that the legislature sought to achieve in enacting [section 143.14].” *Id*. at 352[, 701 N.E.2d at 497, 233 Ill. Dec. at 647].

For completeness, we note that *Hunt* approved the use of the equivalent of Form 3877 by the insurer based on the Illinois statute and a provision in the Domestic Mail Manual. *Hunt v. State Farm Mutual Automobile Insurance Co., supra.*

[11] We believe the reasoning in *Ragan v. Columbia Mut. Ins. Co., supra*, is generally relevant to our case. In § 44-516(1), the Legislature specifically selected that the notice of cancellation be mailed by “registered or certified mail.” We understand that these added services are terms of art, and we believe these services were deliberately chosen by the Legislature. In this regard, we note, for comparison, that in Neb. Rev. Stat. § 44-522(4) (Reissue 2010), concerning property, marine, or liability insurance, the Legislature chose to permit notice by “first-class mail.” See § 44-522(4) (providing “cancellation or nonrenewal shall be sent by registered, certified, or first-class mail to the insured’s last mailing address known to the insurer”). The Legislature chose to require notice by registered or certified mail in § 44-516, but it did not choose to require proof that notice of cancellation was received. But as the court in *Hunt v. State Farm Mutual Automobile Insurance Co.* expressed, under certain statutes, insurance companies have a “‘very low threshold of proof.’” 2013 IL App (1st) 120561 at ¶ 36, 994 N.E.2d at 570, 373 Ill. Dec. at 801. We agree with this observation, and given the terms chosen by the Legislature in the applicable Nebraska statute, § 44-516, we are not inclined to reduce the requirements further. For completeness, we note that we are aware that the mailing-related notice requirements in § 44-516(1) and other statutes were expanded upon, pursuant to 2017 Neb. Laws, L.B. 406, but they were not effective at the time of the underlying events in this case or at the time the district court’s opinion was filed.

In sum, taking the inferences in favor of Barnes as the non-moving party, the evidence submitted by American Standard did not establish directly that it mailed the notice of cancellation by certified mail and it was not entitled to judgment as a matter of law. The district court's order of August 12, 2016, is reversed.

## CONCLUSION

The district court's decision, which weighed the evidence and found that the "majority of the evidence . . . establishes that [American Standard] complied with Neb. Rev. Stat. § 44-516 by sending the cancellation notice to [Barnes] via certified mail," was not warranted in the procedural context of a motion for summary judgment. Accordingly, we reverse the order of the district court which granted American Standard's motion for partial summary judgment, denied Barnes' motion for partial summary judgment, and dismissed Barnes' complaint with prejudice. The cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

Stacy, J., not participating.